Pro Se Complaint for Violation of Civil Rights (Non-Prisoner)

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

JOHN DOE,[1]
    *Plaintiff,*

v.

TRUSTEES OF AMHERST COLLEGE,
JOHN CARTER, Chief of Police of the
Amherst College Police Department, in his
official capacity, and JANE ROE,[2]
    *Defendants.*

Civil Action No.

## COMPLAINT

### INTRODUCTION

1. This is an action for monetary and further relief, bringing challenges pursuant to 20 U.S.C. § 1681 (Title IX), 42 U.S.C. §§ 2000d (Title VI), the Free Speech Clause of the First and Fourteenth Amendments to the U.S. Constitution, and 28 U.S.C. § 1367 (supplemental jurisdiction) against a Federally funded college's adversity and policing of a male Asian-American student, and seeking redress under 28 U.S.C. §§ 1332 (diversity jurisdiction), 1367, and 42 U.S.C. § 1985 (conspiracy against rights) against a female White alumna who threatened that student multiple times and distressed him, and upon information and belief, misled her romantic interest (a female student with relevant history with him) to deceive administrators about him and make him withdraw his enrollment, on account of his race. This action is to discover if where there was the smoke of disparity in treatment, there was the fire of discrimination; and if where individual terrorism within a Federally funded program was sanctioned by State law, there will be redress.

---

[1] A pseudonym.
[2] A pseudonym.

## PARTIES

2. Plaintiff John Doe is an Asian-American student on leave from Amherst College (the "College"). His residential address is stated on the Civil Cover Sheet attached to the Ex Parte Motion for Initial Pseudonymity and Redaction filed herewith.

3. Upon information and belief, Defendant Jane Roe is a graduate of the College whose address and domicile are stated on the abovementioned Civil Cover Sheet.

4. Defendants Trustees of Amherst College are a private corporation organized under the laws of Massachusetts with their principal place of business at 100 Boltwood Avenue, Amherst, Massachusetts. Their undergraduate program is a Federally assisted program under 20 U.S.C. § 1681 and 42 U.S.C. § 2000d.

5. Defendant John Carter is the Chief of Police of the Amherst College Police Department and has been so for decades. That Police Department's usual place of business is at 6 East Drive, Amherst, Massachusetts.

## JURISDICTION AND VENUE

6. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

### Authorities of Amherst College

8. Amherst College has conceptualized and issued between some of its students what it has named the No-Communication and Restricted Proximity Order. Its website shows that, since 2018, each revision of its *Student Code of Conduct* has mentioned such Orders, with the revisions for the 2020-21 and 2021-22 academic years stating that the Orders are "[a]lso known as No Contact Orders."[3]

---

[3] *https://www.amherst.edu/system/files/2021%20-%202022%20Code%20Final_0.pdf*, at 26 (2021-22); *https://www.amherst.edu/system/files/media/2021%2520Student%2520Code%2520of%2520Conduct%2520with%2520page%2520numbers.pdf*, at 28 (2020-21).

9. Initialed and hereafter referred to as D.G.—a Deputy Title IX Coordinator and Senior Associate Dean of Students of Amherst College going into 2022 told Plaintiff Doe around then that students needed no reason to obtain such an Order between another student and themselves. In the same conversation, D.G. told Doe that around 19 out of 20 of these Orders were 'no big deal.'

10. Around then, Plaintiff Doe heard from two White students, one who stated that their own friends (who, upon information and belief, were White) had had such an Order between themselves which was resolved and terminated after mutual contact, and the other who said he had had an Order between another student and himself, after which, upon information and belief, he appeared to spend time with that student, such that the Order appeared to no longer be in effect.

11. An anonymous narrative on the Instagram account @blackamherstspeaks states that D.G. took "a punitive route" against a female Black student "and didn't ask [them] once what [their] side of the story was," as a White alumna had reported that student as "threatening" them for simply calling them a "b*[**]h" on Facebook, with their friend threatening to report the alumna's conduct to her employer.[4]

12. Published on the same Instagram account are multiple anonymous narratives of the College's Police officers investigating Black students with unusual or uncommon interruptions of those students' personal spaces (such as their room(s)) and assumptions against their characters (in not assuming that they were student(s), for example).

### Jane Roe as a Student

13. At all or most relevant times, Defendant Roe described herself as a "crunch head" on her social media account.

---

[4] *https://www.instagram.com/p/CCGiYIIBcn_/?igsh=MTl6eGo1OGJ2amlvYg==*.

14. Upon information and belief, as a student, Roe threatened to 'Title IX' an individual whose initials are T.G. and who appeared to be a male student of color, not on account of sex-based discrimination but because T.G. had disrupted Roe's experience when she was using one College-provided transportation service (whereby students could call a certain number to request that an on-call campus employee pick them up and drop them elsewhere on campus).

15. Upon information and belief, such uses by Roe of her "social capital" affected students of color, women, and queer students disproportionately.

16. During and after the semester when Roe and Doe lived in the same dormitory, Roe informed him that she had had positive experiences with their College's Director of Community Standards when she was alleged to have violated Community Standard(s).

**Despite His Cordiality, Roe Understands Plaintiff to Disserve Her Romantic Interests**

17. During the Spring semester that Doe and Roe shared the same dormitory, each one (the latter upon information and belief) engaged in emotionally bonding activities with ~~Sand~~ a student referred to hereafter as Sandra Sand.

18. Towards the end of that semester, while Roe was holding her, Sand told Doe that she loved him.

19. Because of Sand's attachment to Doe (who had not revealed his reciprocation) and her wish to spend more time bonding with him, Roe soon called him "dead" and "backstabbed."

20. Upon information and belief, Roe proceeded to convince Sand that Doe had not heard this, despite herself believing that he had.

21. Upon information and belief, Defendant Roe proceeded to direct Sand on how she should interact with Doe, including convincing Sand to report him for 'stalking-like

4

behaviors' when they returned to campus, and obtain a No-Communication and Restricted Proximity Order against him; hereafter, the "Order." (Some such information: the SMS messages that the Affidavit of Pseudonymous Plaintiff shows Roe sent contain key phrases substantially connected to that year's *Code of Conduct*, as it, for example, prohibited disability-based discrimination.)

22. Interactions between Plaintiff and the initial administrator of that Order are detailed in Count I.

23. Upon information and belief, Roe made Sand appear to violate the Order by directing her to appear to stare at Doe during the event he was running as described in the abovementioned Affidavit.

24. Upon information and belief, around then, Roe advised Sand to lie to administrators to Doe's detriment, per the inconsistencies in Sand's narrative suggested by the same Affidavit.

25. Upon information and belief, Roe convinced Sand that an adjudication of Doe was worthwhile and would be brief, and when it was forestalled around the time that Doe was pressured to take a medical leave, convinced Sand that his leave was appropriate.

26. Per said Affidavit, Sand then provided the College with information favorable to Doe. Upon information and belief, Roe then convinced Sand to argue to administrators that Doe was dangerous and should have been removed from campus earlier on.

27. Upon information and belief, Roe controlled the account described in the abovementioned Affidavit's ¶¶ 38 & 39.

## CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT

## Defendants Trustees of Amherst College

28. The preceding paragraphs are incorporated herein by reference.

### Issuance of the No-Communication and Restricted Proximity Order

29. When the Director of Community Standards at Amherst College issued its Order over Doe and Sand, the College defined its *Honor Code* to be what "authorize[d] the creation and stewardship of specific community standards and procedures that adjudicate or resolve alleged violations of those standards."[5] This Order stated its "authority is derived from Amherst College."

30. It relied in part on a community standard requiring compliance with "requested meetings with staff or faculty,"[6] and in the email issuing the Order, the Director of Community Standards requested that Doe meet him.

31. The Director was to enforce the *Honor Code* of the time, which provided that "[s]ubject to respect for the rights of others, every student enjoys the assurance of the full exercise of those rights expressed in the Honor Code . . . including . . . . [t]he right to complain of injustice and to bring grievances to the appropriate offices of the College without fear of retaliation."

32. In violation of the above provision, the Order stated that "[a] complaint brought against a party for an alleged violation of this order will be initiated by the College, not by the aggrieved party. The aggrieved party will have the opportunity to serve as a witness in an adjudication process when appropriate."

---

[5] *https://www.amherst.edu/system/files/2021%20-%202022%20Code%20Final_0.pdf*, at 71.
[6] *https://www.amherst.edu/system/files/2021%20-%202022%20Code%20Final_0.pdf*, at 11.

33. The Director did not remedy this violation.

### Initial Administration of the Order

34. In his initial meetings with Plaintiff Doe, the Director placed substantial weight on Sand's allegation that he had demonstrated 'stalking-like behaviors,' and sided with Roe despite her direct threats against Doe, in part by assuming that certain mentions by him of desire to avoid Sand were covert attempts to interact with her.

### Adjudication of Plaintiff Doe

35. When the Director began an adjudication against Doe, the College's *Code of Conduct* contained provisions by which Doe would have had access to information about what Sand had initially complained to the College about. Upon information and belief, administrators tried to circumvent these provisions in the *Code*, for example, by arguing that certain online activity originating on campus was not within the College's program. However, the *Code* provides that use of Internet on campus is within the College's program.

36. Such conduct breached Doe's reasonable contractual expectations.

37. After knowing that the College had caused a run-in between Doe and Sand, the Dean of Students apparently explained to Sand that it had been Doe's choice to take a medical leave. This was inaccurate, given all the choices the College made, described above and in the Affidavit filed herewith, and given the fact that Doe was attempting to resolve certain matters.

38. These breaches have caused Doe to lose reasonably anticipated wages, as he would otherwise have graduated and likely attained a substantial level of professional success.

## COUNT II

## VIOLATION OF THE FREE SPEECH CLAUSE
## OF THE FIRST AND FOURTEENTH AMENDMENTS
## TO THE UNITED STATES CONSTITUTION

**Defendants Trustees of Amherst College and John Carter, Chief of Police of the Amherst College Police Department, in his official capacity**

39. The preceding paragraphs are incorporated herein by reference.

40. The First Amendment to the U.S. Constitution, which applies to the States through the Fourteenth Amendment, has long prohibited viewpoint-based discrimination by a state actor.

41. By the time the Dean of Students was on notice that her college had caused a run-in against the Order between Doe and Sand after ignoring an email which Doe reported to have violated that Order, and had relied on inaccurate information used against Doe (with information having come out in his favor, for example, regarding the email and his history with Sand), these misunderstandings and a certain dose of Police bias against Doe had led to the creation of numerous Police reports, much less accurate than said information which she had obtained.

42. Moreover, the Dean's Senior Associate, D.G., had promised Doe, based on what Sand's family had told the Dean, that he would not be suspended in relation to this matter.

43. The Dean then responded to Doe's requests for certain information and redress by citing a Policy—created, upon information and belief, one day after the Dean received certain information favorable to Doe—which made "[a]gitated reactions to changes in policies and procedures"[7] grounds for prohibiting an individual from campus grounds under threat of arrest.

---

[7] *https://www.amherst.edu/offices/campus_police/general_safety/campus-violence-reporting-and-assessment-policy.*

8

44. The College used that Policy, and relied on that provision, to renege on promises earlier made to Doe and rely on the clearly unreliable reports of College Police.

## COUNT III

## VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. § 2000d)

### Defendants Trustees of Amherst College

45. The preceding paragraphs are incorporated herein by reference.

46. Upon information and belief, there is disparate treatment in how students of different classes covered by Title VI are treated by the College Police, and within disciplinary processes, and under such Orders as that over Doe in particular.

## COUNT VI

## MOTION FOR LEAVE TO AMEND COMPLAINT

### FED. R. CIV. P. 15

47. Plaintiff Doe hereby gives notice that he intends to amend this Complaint, filed so that he may preserve certain rights.

48. ~~Upon information~~ Defendant Roe's interference with his life, as described above, constituted tortious interference with Doe's contractual relationship with the College, and intentional infliction of emotional distress, causing Plaintiff Doe over $75,000 in damages.

9

**REQUEST FOR RELIEF**

WHEREFORE, John Doe respectfully requests that, upon his anticipated Amended Complaint, the Court grant him the following relief:

A.     Determine and declare that:

    (1) The Trustees of Amherst College did not have the contractual authority to provide, within its No-Communication and Restricted Proximity Order, that "[a] complaint brought against a party for an alleged violation of this order will be initiated by the College, not by the aggrieved party. The aggrieved party will have the opportunity to serve as a witness in an adjudication process when appropriate."

    (2) Said Trustees did not administer the remaining provisions of said Order in accordance with Doe's reasonable contractual expectations.

    (3) The Campus Violence Reporting and Assessment Policy as exercised by the Trustees and John Carter, Chief of Police of the Amherst College Police Department, against Plaintiff Doe violated the Free Speech Clause of the First and Fourteenth Amendments to the U.S. Constitution.

B.     Issue a Permanent Injunction enjoining the Trustees of Amherst College and Chief of Police John Carter from discriminatory and otherwise unlawful disciplinary action against John Doe;

C.     Award damages, including reasonably anticipated wages, compensatory damages for pain and suffering, and punitive damages, in an amount to be determined at trial;

D.     Award pre- and post-judgment interest;

E.     Award attorneys' fees, pursuant to 42 U.S.C. § 1988, M.G.L. c. 12, § 11I, and M.G.L. c. 93, § 102;

F.      Award costs; and

G.      Award all further equitable relief that the Court may deem just and proper.

                                                                    Respectfully submitted,
                                                                    Plaintiff, pro se

                                                                    */s/ John Doe*

                                                                    John Doe
                                                                    Contact information on file